UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-81320-CIV-MARRA

KOLMAT DO BRASIL, LDTA a foreign
corporation and GIAN PIERO BERNERI,
an individual,

Plaintiffs,

vs.

EVERGREEN UNITED INVESTMENTS, LLC,
a Florida limited liability corporation; GSA
INCOME AND DEVELOPMENT FUND, LP,
a Florida limited partnership; JEAN JOSEPH,
an individual, GIORGIO MARIANI, and
ADMIRAL ADMINISTRATION (US), LLC, a
Delaware corporation,

Defendants.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendant Admiral Administration (US), LLC's Motion to Dismiss Second Amended Complaint (DE 64) and Defendant Giorgio Mariani's Motion to Dismiss Second Amended Complaint (DE 66).  The Court has carefully considered the Motions and is otherwise fully advised in the premises.

I. Background

On March 10, 2015, the Court entered an order granting Giorgio Mariani ("Mariani") and Admiral Administration (US) LLC's ("Admiral") motions to dismiss the First Amended Complaint and granting Plaintiffs Kolmat Do Brasil, LDTA and Gian Piero Berneri's (collectively, "Plaintiffs") leave to amend. (DE 57.)    Plaintiffs have now filed a Second Amended Complaint ("SAC") (DE 63) against Defendants Evergreen United Investments, LLC

("Evergreen"), GSA Income and Development Fund, LP ("GSA"), Jean Joseph ("Joseph"), Mariani and Admiral.  With respect to Mariani and Admiral, the SAC brings claims for a violation of section 10(b) of the Exchange Act (count one), fraud in the inducement (count four), fraudulent misrepresentation (count five) and conspiracy to commit fraud (count six).

According to the SAC, Kolmat is a Brazilian corporation whose business involves construction of luxury resorts in Brazil and Central America. (SAC ¶ 8.)  Berneri is the manager of Kolmat. (SAC ¶ 9.)  Evergreen and GSA are unregistered investment funds. (SAC ¶¶ 10-11.)  Joseph is a principal and manager of Evergreen and GSA. (SAC ¶¶ 12.)  Mariani has acted as a broker for Evergreen and GSA. (SAC ¶ 13.)  Admiral is the designated administrator for the GSA Fund.  (SAC ¶ 14.)

During the year 2013, Kolmat began plans to build a resort located in Maceio, Alagoas, Brazil. (SAC ¶ 18.)  Kolmat began investigating means of raising the necessary $30 million to complete the project. (SAC ¶ 19.)   In late 2013, Mariani approached Berneri with an opportunity to secure a loan sufficient to fund the resort. (SAC ¶ 20.)  At that time, Mariani and Berneri had known each other for four years and Mariani "used [ ] Berneri's trust to convince him to negotiate a loan with Joseph, and Mariani was acting to gain Berneri's trust based upon the specific directions of [ ] Joseph." (SAC ¶ 21.)

On January 31, 2014, Kolmat entered into a deposit agreement with Evergreen, providing $70,000.00 to cover the initial fees and expenses associated with the loan. (SAC ¶ 22.)  Berneri provided the $70,000.00 to the trust account at the law office of Henry Johnson, which was wired from the trust account to the GSA account.  Joseph and Admiral directed the wiring of the $70,000.00 as a "first step in the conspiracy of [ ] Joseph and Admiral to defraud Plaintiff."

2

(SAC ¶ 24.)

On February 26, 2014, Joseph wrote to Berneri that a loan had been approved. (SAC ¶ 25.) On April 11, 2014, the parties entered into an "investment agreement" and all Defendants "participated in creating the ruse of a loan agreement . . . so as not to cause suspicion . . . that there would never be a loan." (SAC ¶ 28.) This agreement stated that Evergreen would loan Kolmat $30 million at a 4.5% interest rate, and Kolmat agreed, as a condition precedent for the loan, to invest $3 million into units of GSA. (SAC ¶ ¶ 32-33.) Berneri personally provided the $3 million on behalf of Kolmat and believed that it was being placed in a secure investment and would ensure the $30 million loan. (SAC ¶ 35.) Joseph, on behalf of himself, Evergreen GSA, Mariani and Admiral, made statements about the investment account that he knew were false. All Defendants knew the $30 million would be stolen from Plaintiffs. (SAC ¶ 38.)

Berneri tendered two blank $1 million checks to Mariani, who accepted the checks and made them payable to the GSA operating account. Berneri noted on the memorandum line that the two checks were being issued to his personal account with GSA. (SAC ¶ 39.) On April 11, 2014, Berneri wired an additional $1 million from his personal account to the GSA account. Mariani was present when the transfer was made. (SAC ¶ 40.) On May 1, 2014, Admiral knew there would never be a loan, but consistently made assurances of a loan even though it knew that no loan existed or would be made. (SAC ¶ 43.) Mariani made these assurances as well. (SAC ¶ 44.)

Because no loan was ever issued, Plaintiff[1] wrote to Admiral, enclosing a written notice of withdrawal to retrieve the $3 million deposit, which was never honored. (SAC ¶ 47.) Admiral

---

[1] The SAC does not identify which Plaintiff.

and Mariani knew that Joseph intended to permanently deprive Plaintiffs of $3 million. (SAC ¶ 48.)  On August 11, 2014, Joseph responded to Plaintiff,[2] stating that Plaintiff needed to send a letter cancelling his subscription rather than request a withdrawal of funds.  (SAC ¶ 50.)  By this time, all Defendants were aware that Joseph had converted the funds.  (SAC ¶¶ 51, 53.)

On August 21, 2014, a fund administrator for Admiral informed Plaintiff that he had spoken to Joseph who assured him that the funds would be deposited.  (SAC ¶ 55.)  At that time, Admiral knew that the funds had been converted by Joseph, but intentionally failed to disclose this to Plaintiffs to delay Plaintiffs finding out about the conversion. (SAC ¶ 56.)  Admiral made false statements and conspired with Defendants to convert Plaintiffs' funds. (SAC ¶¶ 57-59.)  In fact, Joseph, Evergreen, GSA and Admiral knew the funds had been transferred. (SAC ¶ 60.)

Mariani moves to dismiss on the basis that the none of the claims are plead with particularity as required both by Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act, 15 U.S.C. § § 78u-4b ("PSLRA") and that the SAC does not meet the exacting requirements of the PSLRA.  Admiral moves to dismiss on the basis that the SAC fails to state a claim and fails to plead any of its claims with particularity as required under Rule 9(b).

## II. Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his

---

[2] The SAC does not identify which Plaintiff.

'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

For allegations of fraud or mistake, the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply. That rule provides that "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

The Eleventh Circuit has held that:

> Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of

the fraud."

Ziemba v. Cascade Intern., Inc., 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1371 (11th Cir.1997)).  In short, "under Rule 9(b) a plaintiff must plead the who, what, when, where, and how of the allegedly false statements." Begualg Inv. Management Inc. v. Four Seasons Hotel Ltd., No. 10-22153-CIV, 2011 WL 4434891, * 2 (S.D. Fla.2011) (quoting Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1237 (11th Cir.2 008)).

III.  Discussion

A.  Defendant Mariani

The Court begins by highlighting some of the pertinent allegations against Mariani:

1) In late 2013, Mariani approached Berneri with an opportunity to secure a loan sufficient to fund the resort.  (SAC ¶ 20).

2) Joseph, on behalf of himself, Evergreen GSA, Mariani and Admiral, made statements about the investment account that he knew were false and all Defendants knew the $30 million would be stolen from Plaintiffs. (SAC ¶ 38.)

3) Mariani knew the loan would never be made. (SAC ¶ ¶ 27-28, 36, 43-44.)

4) Mariani accepted the checks and made them payable to the GSA operating account. (SAC ¶ 39.)

5) On April 11, 2014, Berneri wired an additional $1 million from his personal account to the GSA account.  Mariani was present when the transfer was made. (SAC ¶ 40.)

6)  On May 1, 2014, Admiral knew there would never be a loan, but consistently

>   made assurances of a loan even though it knew that any loan existed or would be
>   made. (SAC ¶ 43.) Mariani made these assurances as well. (SAC ¶ 44.)
>
> 7) Mariani knew that Joseph intended to permanently deprive Plaintiffs of $3
>   million. (SAC ¶ 48.)

To state a claim under § 10(b) and Rule 10b–5, a plaintiff must allege:

> (1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss [i.e., damages]; and (6) a causal connection between the material misrepresentation or omission and the loss, commonly called "loss causation."

FindWhat Investor Group v. FindWhat.com, 658 F.3d 1282,1285 (11th Cir. 2011).

The SAC has failed to allege a specific misrepresentation (or omission) made by Mariani as distinct from a misrepresentation made by another Defendant. It appears Plaintiffs seek to bring an aiding and abetting suit under section 10(b), which is prohibited. Ziemba 256 F.3d at 1204 (citing Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 191 (1994)). As such, the SAC also fails to allege reliance by Plaintiffs on a statement by Mariani. See Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148, 159 (2008) (at most, the defendants had aided and abetted in a misstatement which means investors did not rely on those defendants' statements).

With respect to all claims, the SAC does not meet the pleading requirements of Rule 9(b).[3] Rather than making particularized allegations against Mariani, the SAC improperly lumps

---

[3] Related to this is the failure of the SAC to adequately plead scienter. Under the PSLRA, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). This requirement applies to the scienter element of a Section 10(b) claim and requires that the defendant's intent "to deceive, manipulate, or defraud" be stated with particularity. Bryant v. Avado Brands, Inc.,187 F.3d 1271, 1281–82 (11th Cir. 1999).

7

all Defendants together, stating that they, as a group, made "assurances" to Plaintiffs.  See Bruhl v. Price Waterhousecoopers Intern., No. 03-23044-Civ-MARRA, 2007 WL 997362, at * 3 (S.D. Fla. Mar. 27, 2007) ("Rule 9(b) does not allow a complaint to merely 'lump' multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'")  Further, the SAC states that Joseph made false statements on behalf of Mariani, without alleging the basis for Joseph's authority for speaking on behalf of Mariani.  Lastly, it is unclear what statement(s) of Mariani are the alleged misrepresentations and the time and place of those misrepresentations.[4]

Based on the foregoing, the motion to dismiss is granted.[5]  Plaintiffs will be given another opportunity to remedy the pleading deficiencies with respect to Mariani.

---

[4] In Plaintiffs' response memorandum (DE 67 at 5-6), Plaintiffs cite to allegations of the SAC they claim details Mariani's misrepresentations and how they relied on the statements.  The statements in the response memorandum, however, differ from the actual allegations in the SAC.

[5] Defendant moves to dismiss the fraud in the inducement and fraudulent misrepresentation claims on the additional basis that these claims are barred by the economic loss doctrine.  In Tiara Condominium Association, Inc. v. Marsh & McLennan Cos., Inc., 110 So.3d 399 (Fla. 2013), the Florida Supreme Court held that the economic loss rule only applies to product liability claims.  Id. at 407.  Recently, the Eleventh Circuit stated that Tiara "may have left intact a separate hurdle, namely that 'a party still must demonstrate that . . . the tort is independent of any breach of contract claim.'  While the exact contours of this possible separate limitation, as applied post-Tiara, are still unclear, the standard appears to be that 'where a breach of contract is combined with some other conduct amounting to an independent tort, the breach can be considered negligence.'"  Lamm v. State Street Bank and Trust, 749 F.3d 938, 947 (11th Cir. 2014) (internal citations omitted).  Given the lack of the clarity in the SAC coupled with the lack of clarity of the Florida economic loss rule as identified in Lamm, the Court will defer addressing this doctrine at this time.

      B.  Defendant Admrial

A review of the SAC reveals that the allegations against Admiral are unclear.  In addition, the allegations pled lack the necessary particularity required.

A significant portion of Defendant's motion to dismiss revolves around a letter dated April 9, 2014 on Admiral letterhead.  This letter is not attached to the SAC (or any other prior pleading), but both parties refer it in their arguments. (Apr. 9, 2014 letter, DE 25-1.)  Instead, the SAC refers to an April 9, 2014 letter (SAC ¶ 61), but attributes the letter to a different author than the signature found on the letter discussed by the parties.  Simply put, the Court is confused whether Plaintiffs neglected to attach this letter to the SAC or whether Plaintiffs are referring to a different letter than the letter attached to DE 25-1.[6]  The SAC is also unclear as to the timing of the April 9, 2014 letter in relationship to when the $3 million in funds were transferred and how this letter relates to the allegations that those funds were tendered on April 11, 2014. (SAC ¶¶ 39-40.)  To determine reliance, it is important for the SAC to plead clearly the timing of the alleged misrepresentation by Admiral vis-a-vis the release of funds by Plaintiffs.

Adding to the Court's confusion are conflicting statements in Plaintiffs' response memorandum stating that no loan documents were ever prepared (DE 68 at 8) and allegations in the SAC that Defendants drafted an investment agreement (SAC ¶¶ 28, 36, 39; Investment Agreement, Ex. C to SAC.)  This apparent inconsistency regarding the documents entered into between the parties and the possible reliance that may have flowed from those documents must be remedied.

---

[6] If Plaintiffs wish for the Court to consider this letter, they should attach the letter as an exhibit to the complaint.

The SAC also fails to meet the pleading requirements of Rule 9(b) with respect to the all the claims brought.  Rather than making particularized allegations against Admiral, the SAC improperly lumps all the Defendants together, stating that they, as a group, made assurances to Plaintiffs, confirmed statements made by Joseph, and made statements to Plaintiffs. (See, e.g., SAC ¶¶ 75, 94, 100.)  See Bruhl, 2007 WL 997362, at * 3 ("Rule 9(b) does not allow a complaint to merely 'lump' multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'")

Lastly, many of the allegations against Admiral lack the necessary specificity.  For example, while the SAC states that Admiral made assurances to Plaintiffs (see, e.g., SAC ¶¶ 28, 43-44, 75-77), the allegations do not specify who made the assurances, when the assurances were made and to whom, and what assurances were made.  Likewise, the SAC makes other conclusory allegations regarding what Admiral knew regarding the alleged conversion. (See, e.g., SAC ¶¶ 27, 43, 73.)

Based on the foregoing, the motion to dismiss is granted. Plaintiffs will be given another opportunity to remedy the pleading deficiencies highlighted herein with respect to Admiral.

IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant Admiral's Motion to Dismiss Second Amended Complaint (DE 64) and Defendant Mariani's Motion to Dismiss Second Amended Complaint (DE 66) is **GRANTED.**  Plaintiffs may file a third

amended complaint **within 14 days of the date of entry of this Order.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 5th day of June, 2015.

_____
KENNETH A. MARRA
United States District Judge